IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| GADSDEN INDUSTRIAL PARK, LLC, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )   NO. 4:14-cv-00039-RBP<br>) |
| THE UNITED STATES OF AMERICA, et al., | )<br>)<br>) |
| Defendants. | ) |

### MEMORANDUM OPINION

This cause comes on to be heard on defendant the United States of America's Motion to Dismiss, filed on April 14, 2014, and defendants CMC, Inc. ("CMC") and Harsco Corporation's ("Harsco") Motion to Dismiss, or in the Alternative, to Stay, filed on May 2, 2014. (Docs. 20 and 25). For the reasons stated below, the court finds that the United States' motion is due to be **GRANTED** and CMC and Harsco's motion is due to be **DENIED**.

### I. Background

On January 8, 2014, plaintiff Gadsden Industrial Park, LLC ("GIP") filed tortious conversion and negligence claims against the United States under the Federal Torts Claim Act ("FTCA") and against CMC and Harsco. (Doc. 1). Prior to this filing, the Environmental Protection Agency (the "EPA"), under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), designated the Gulf States Steel Site as a Superfund site due to on-site contamination and "undertook to remediate the Site." (*Id*. at ¶¶ 12-13). To this end, the EPA contracted with CMC to act as its site manager, and CMC contracted with Harsco to work at the Superfund site. (*Id*. at ¶ 14). During the remediation of the site, the

1

defendants removed, sold, and/or rendered unusable several lines of installed railroad track owned by GIP.  (*Id*. at ¶¶ 10, 17, 19, 21).  GIP now seeks compensation for the lost railroad tracks in this court, (doc. 1), and in the Court of Federal Claims (the "CFC"), (doc. 25-1).

## II. Legal Standard

**A. Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). These attacks on subject matter jurisdiction come in two separate forms – a "facial" challenge or a "factual" challenge.  The Eleventh Circuit summarized,

> "[f]acial attacks" on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)). "Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*

*Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).  When the attack is factual, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  *Id*. at 1529 (quoting *Williamson v. Tucker,* 645 F.2d 404, 412-13 (5th Cir. 1981)).

**B. Rule 12(b)(6)**

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW,*

*Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). All "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, a complaint only requires "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[1] The Supreme Court explained in *Twombly* that a complaint "does not need detailed factual allegations," but that the allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555. Furthermore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted). The Supreme Court clarified the *Twombly* standard in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009): "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." The Eleventh Circuit has explained that the *Twombly*/*Iqbal* rule "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Watts v. Fla. Int'l. Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

---

[1] The Supreme Court in *Bell Atl. Corp. v. Twombly* abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson*. *See Bell Atl. Corp.*, 127 S. Ct. at 1968 (quoting *Conley*, 355 U.S. 41, 45-46 (1957)). The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp.*, 127 S. Ct. at 1969.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1937.

### III. Discussion

**A. The United States' Motion to Dismiss**

In its motion, the United States has mounted a factual challenge to this court's jurisdiction and argues that the court lacks jurisdiction because GIP has failed to meet the requirements of 28 U.S.C. § 2675(a). (Doc. 21, p. 5). "A district court only has jurisdiction over an FTCA action if the plaintiff has met section 2675(a)'s requirements." *Burchfield v. United States*, 168 F.3d 1252, 1254-55 (11th Cir. 1999) (citing *Bush v. United States*, 703 F.2d 491, 494 (11th Cir. 1983)). Section 2675(a) provides, in pertinent part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). The United States contends in its motion and attached affidavit that GIP has not filed an administrative claim. *See Burchfield*, 168 F.3d at 1255 (11th Cir. 1999) (§ 2675(a) requires the plaintiff to "(1) give [ ] the [appropriate] agency written notice of his or her claim sufficient to enable the agency to investigate and (2) place[ ] a value on his or her claim.") (quotations and citation omitted). GIP responds that its July 19, 2013 letter, *see* (doc. 24-1, p. 1), is sufficient to "present[] the claim" under § 2675(a).

Assuming, without deciding, that the letter was sufficient to present the claim,[2] the court finds that the claim was not "denied by the agency in writing and sent by certified or registered

---

[2] The court notes that (1) "the amount of information required is 'minimal'" and (2) the July letter "place[d] a value on [the] claim." *Burchfield*, 168 F.3d at 1255 (citations omitted).

mail." 28 U.S.C. § 2675(a). As GIP admits, "the EPA's denial of the claim was not 'sent by certified or registered mail.'" (Doc. 24, p. 11) (quoting 28 U.S.C. 2675(a)). GIP, however, contends that this court should be "unwilling to permit the United States to stand on technicalities", *see Forest v. United States*, 539 F. Supp. 171, 174 (D. Mont. 1982), or to "sandbag [GIP]," *see McGowan v. Williams*, 623 F.2d 1239, 1243 (7th Cir. 1980). (Doc. 24, p. 12). But, as the Supreme Court of the United States stated,

> [t]he [§ 2675(a)] command that an "action shall not be instituted ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail" *is unambiguous. We are not free to rewrite the statutory text*.

*McNeil v. United States*, 508 U.S. 106, 111 (1993) (emphasis added); *see also Phillips v. United States*, 260 F.3d 1316, 1318 (11th Cir. 2001) ("It is well established that the FTCA is a specific waiver of the sovereign immunity of the United States and must be strictly construed."). § 2675(a) plainly and unambiguously requires that the agency's denial be (1) "in writing" and (2) "sent by certified or registered mail." Like the Supreme Court, this court is not free to rewrite or disregard the statutory requirements.

GIP also argues that because § 2675(a) would deem the claim denied on January 19, 2014 and this suit was filed on January 8, 2014, the court should not dismiss the claims against the United States. § 2675(a) provides that "[t]he failure of an agency to make final disposition of a claim *within six months* after it is filed shall, at the option of the claimant *any time thereafter*, be deemed a final denial of the claim for purposes of this section" (Emphasis added). Thus, GIP could only "deem[]" the claim denied after January 19, 2014; almost six months is not six months. This court's subject matter jurisdiction is not a matter of horseshoes and hand grenades. *See Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008) (stating that the court would lack jurisdiction over a suit initiated before written denial and

within six months of the filing of the administrative claim). Consequently, GIP has not met the requirements of § 2675(a), and this court lacks subject matter jurisdiction over GIP's claims against the United States.

**B. CMC and Harsco's Motion to Dismiss/Stay**

In their facial challenge, CMC and Harsco contend that they are entitled to immunity for GIP's claims against them under "the doctrine of derivative or absolute immunity," the government contractor defense, and § 2675(a). (Doc. 25, ¶¶ 5-7). Alternatively, they argue that the court should stay this proceeding in favor of GIP's action against the United States in the CFC. (*Id*. at ¶ 8).

*1. Absolute Immunity: Westfall and the Government Contractor Defense*

CMC and Harsco argue that the test for absolute immunity articulated in *Westfall v. Erwin*, 484 U.S. 292 (1988) entitles them to immunity from state tort law. Similarly, they contend that the "government contractor defense" set out in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988) grants them immunity. These Supreme Court decisions create two similar, and often over-lapping, tests for granting immunity to those employed and/or contracting with the United States government. The court will first outline the legal framework and subsequent history of these decisions and then apply them to the facts of the current case.

As a threshold matter, although CMC and Harsco have framed their motion to dismiss as an attack on the court's subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the question of absolute immunity for nongovernmental actors is not a jurisdictional issue. *See Westfall*, 484 U.S. at 299 ("A material issue of fact thus exists as to whether petitioners exercised sufficient discretion in connection with the alleged tort to warrant the shield of absolute immunity."); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 77 (2d Cir. 1998) (affirming

district court's dismissal for absolute immunity under Rule 12(b)(6)); *Boyle*, 487 U.S. 500, 514 (1988) ("[W]hether the facts establish the conditions for the [government contractor] defense is a question for the jury."); *Lambert v. Mail Handlers Benefit Plan*, 886 F. Supp. 830, 837 n.3 (M.D. Ala. 1995) ("[T]he [*Boyle*] court was examining a federal common law preemption defense asserted by the defendant rather than the presence of federal question jurisdiction."). Thus, the court will analyze the immunity issue under Fed. R. Civ. P. 12(b)(6).

a. *Westfall* Immunity

In *Westfall*, the Supreme Court held that federal officials were not entitled to "absolute immunity … from state-law tort liability unless the challenged conduct is within the outer perimeter of [the] official's duties and is discretionary in nature." 484 U.S. at 300. In requiring that the act be discretionary, the Court reasoned as follows:

> The central purpose of official immunity, promoting effective government, would not be furthered by shielding an official from state-law tort liability without regard to whether the alleged tortious conduct is discretionary in nature. … It is only when officials exercise decisionmaking discretion that potential liability may shackle "the fearless, vigorous, and effective administration of policies of government."

*Id*. at 296-297 (quoting *Barr v. Matteo,* 360 U.S. 564, 571 (1959)). The Court rejected a "wooden interpretation" of discretionary, noting that some conduct "will often involve the exercise of a modicum of choice and yet be largely unaffected by the prospect of tort liability." *Id*. "Courts must not lose sight of the purposes of the official immunity." *Id*. at 299. Instead, whether an act is discretionary involves an analysis of "whether the contribution [of immunity] to effective government in particular contexts outweighs the potential harm to individual citizens." *Id*.

Soon after the *Westfall* decision, however, Congress amended the FTCA to provide absolute immunity to government employees for all acts within the scope of their employment,

discretionary or otherwise. *United States v. Smith*, 499 U.S. 160, 163 (1991). Despite *Westfall* being superseded by statute, some circuits courts have continued to apply the *Westfall* test to private actors contracting with the government. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 72 (2d Cir. 1998) ("[T]he *Westfall* test remains the framework for determining when nongovernmental persons or entities are entitled to the same immunity."); *Mangold v. Analytic Servs., Inc.*, 77 F.3d 1442, 1447 (4th Cir. 1996) ("Extending such immunity to the private sector, in the narrow circumstances where the public interest in efficient government outweighs the costs of granting such immunity, comports with the principles underlying the immunity recognized in *Barr* and *Westfall*."); *Slotten v. Hoffman*, 999 F.2d 333, 337 (8th Cir. 1993) (extending absolute immunity to a private party's discretionary actions). Relying on these cases, CMC and Harsco ask this court to also apply *Westfall* to government contractors.

b. Government Contractor Defense

When applicable, the "government contractor defense" displaces state tort law and applies, instead, the "federal law of a content prescribed (absent explicit statutory directive) by the courts – so-called 'federal common law.'" *Boyle*, 487 U.S. at 504. This preemption, however, "only [occurs] when the imposition of liability under state law would create a 'significant conflict' with federal policy in an area of 'uniquely federal interest.'" *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1333 (11th Cir. 2003) (quoting *Boyle*, 487 U.S. at 507). The Supreme Court further limited the defense by adopting a three-part test to determine "the scope of displacement." *Boyle*, 487 U.S. at 513. Thus, in order to be immune from state tort liability under *Boyle*, CMC and Harsco must demonstrate (1) the contract involves an area of uniquely federal interest; (2) a significant conflict exists between the state law and that interest;

and (3) their actions were within *Boyle*'s "scope of displacement." The court will elaborate on each of these pre-requisites for immunity to attach.

### i. Uniquely Federal Interest

In *Boyle*, relying on the unique federal interests of the "obligations to and rights of the United States under its contracts" and "civil liability of federal officials for actions taken in the course of their duty," the Court held that the "the procurement of [military] equipment by the United States is an area of uniquely federal interest." 487 U.S. at 506-507. While *Boyle* only held that a unique federal interest is present in military, procurement contracts, the Eleventh Circuit has extended the defense to a "service contract between the [United States] Army and [a government contractor]." *Hudgens*, 328 F.3d at 1334. Furthermore, in a pre-*Boyle* case,[3] the Eleventh Circuit rejected an arbitrary distinction between military and non-military contractors:

> Although most recent decisions refer to the defense as being available to "military" contractors, "[t]he rationale behind the defense is an extension of sovereign immunity: in circumstances in which the government would not be liable, private contractors who act pursuant to government directives should not be liable." *Hansen v. Johns-Manville Products Corp.,* 734 F.2d 1036 (5th Cir. 1984, *en banc* ), *cert. denied,* 470 U.S. 1051, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985). Both the history of the defense and its general rationale lead us to the conclusion that it would be illogical to limit the availability of the defense solely to "military" contractors. If a contractor has acted in the sovereign's stead and can prove the elements of the defense, then he should not be denied the extension of sovereign immunity that is the government contract defense.

*Burgess v. Colorado Serum Co., Inc.*, 772 F.2d 844, 846 (11th Cir. 1985); *Richland-Lexington Airport Dist. v. Atlas Properties, Inc.*, 854 F. Supp. 400, 421 (D.S.C. 1994) ("[T]here is simply no reason why a nonmilitary contractor should be barred from enjoying this extension of immunity simply because he does not contract with the armed forces.").

### ii. Significant Conflict

---

[3] While the *Boyle* court rejected the Eleventh Circuit's formulation of the government contractor defense, 487 U.S. at 513, the reasoning to apply the defense to non-military contractors is still applicable.

To determine if a "significant conflict" between the uniquely federal interest and state law existed, the *Boyle* court identified the "discretionary function" exception found in the § 2680 of the FTCA as the "limiting principle" of the defense. 487 U.S. at 509. In other words, "the discretionary function exception to the FTCA [] define[s] the parameters of the defense." *Richland-Lexington*, 854 F. Supp. at 419.

While the FTCA generally allows suit against the United States for the negligence of government employees, 28 U.S.C. § 1346(b), § 2680(a) – the discretionary function exception – excludes "[a]ny claim … based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." This "exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988). If there is no prescribed course of action, then the court "must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* "The discretionary function exception is intended to prevent the courts from second-guessing ... administrative decisions grounded in social, economic, or political policy through the medium of an action in tort." *U.S. Aviation Underwriters, Inc. v. United States*, 562 F.3d 1297, 1299 (11th Cir. 2009) (quotations and citation omitted). Thus, for challenged action or decision to be discretionary – and thus create a significant conflict – it must be "based on considerations of public policy." *Berkovitz*, 486 U.S. at 537; *Boyle*, 487 U.S. at 511 (finding a significant conflict where the challenged act involved "judgment as to the balancing of many technical, military, and even social considerations").

### iii. Scope of Displacement

Even if the action or decision involves a uniquely federal interest and a significant conflict between that interest and the state law, it must also be with the "scope of displacement" for immunity to apply. The court set out a three-part test to determine the "scope of displacement":

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Id*. at 512. The court reasoned that these requirements were necessary to ensure "the suit is within the area where the policy of the 'discretionary function' would be frustrated" and to avoid "some incentive for the manufacturer to withhold knowledge of risks." *Id.* Applying this test to a service/maintenance contract, the Eleventh Circuit

> rearticulate[d] the defense's three elements to foreclose liability under state tort law if (1) the United States approved reasonably precise maintenance procedures; (2) [the contractor's] performance of maintenance conformed to those procedures; and (3) [the contractor] warned the United States about the dangers in reliance on the procedures that were known to [the contractor] but not to the United States.

*Hudgens*, 328 F.3d at 1335. In the present case, then, the "scope of displacement" test would require that (1) the EPA approved reasonable precise clean-up procedures; (2) CMC and Harsco followed those procedures; and (3) CMC and Harsco revealed any dangers regarding the clean-up activity of which the government was not aware to the EPA. *See Richland-Lexington*, 854 F. Supp. at 424.

### c. Application of *Westfall* and *Boyle*

Considering the parameters of the defenses, subsequent courts' interpretations, and the arguments of the parties, the court determines the issues to be the following:

(1) Whether *Westfall* applies to private, government contractors.

11

(2) Whether, if *Westfall* applies, CMC and Harsco have demonstrated that their actions and/or decisions were "discretionary," as the term was used by the *Westfall* court.

(3) Whether CMC and Harsco's actions and/or decisions under the non-military, non-procurement contract involved a "uniquely federal interest."

(4) Whether CMC and Harsco's actions and/or decisions created a "significant conflict" with a "uniquely federal interest." More specifically, whether the actions and/or decisions were discretionary within the meaning of § 2680(a) of the FTCA.

(5) Whether, if CMC and Harsco's actions and/or decisions involved a "significant conflict" between a "uniquely federal interest" and state tort law, the actions and/or decisions were also within the "scope of displacement."

Assuming, without deciding, that (1) *Westfall* applies to the present case and (3) the challenged actions and/or decisions involve a "uniquely federal interest," the court finds that under issues (2) and (4) CMC and Harsco have failed to demonstrate that their actions and/or decisions were discretionary. Because the parties have not demonstrated a "significant conflict," the court need not consider (5) whether the actions and/or decisions were within the "scope of displacement."

Accepting the allegations of the complaint, as it must, the court finds that the alleged conduct was not "discretionary." The complaint alleges that "no contamination existed … which would have authorized, necessitated or required the Defendants … to have removed GIP's railroad track." (Doc. 1, ¶¶ 16,). It also specifically alleges that the defendants had "no discretion … to [] remove[] GIP's track or cover[] it," (*id*. at ¶ 17), and then, for good measure, re-alleges that each defendant "did not possess discretion," (*id*. at ¶¶ 38, 42, 46). Moreover, the

complaint does not establish the costs and benefits of that decision.[4]  Without such facts, the court cannot determine "whether the contribution [of immunity] to effective government … [would] outweigh[] the potential harm to [GIP]."  *Westfall*, 484 U.S. at 299.  The complaint also does not contain facts indicating who made the decision to convert GIP's property, how that decision was made, why the decision was made, or if the decision was approved by the government.  Again, without facts concerning the decision making process, the court cannot find that the decision was  "based on considerations of public policy."  *Berkovitz*, 486 U.S. at 537; *Richland-Lexington*, 854 F. Supp. at 420 ("To trigger operation of the [government contractor defense], a defendant must demonstrate that the governmental authority approved of the challenged conduct and that this approval encompassed the permissible exercise of judgment.").  The allegations in the complaint do not establish that CMC or Harsco's conduct was discretionary under either *Westfall* or *Boyle*.  Thus, at this stage in the litigation, CMC and Harsco have failed to demonstrate that they are entitled to immunity.

*2. Immunity under § 2675(a)*

CMC and Harsco also contend their status as contractors allows them to rely on the United States' defense that GIP did not file an administrative claim as required by the FTCA. (Doc. 26, p. 11).  GIP responds that "CMC and Harsco cite numerous cases which simply do not stand for the proposition that the administrative claim requirement … applies to private corporations." (Doc. 31, p. 18).  The court agrees with GIP.  *See Mann v. Pierce*, 803 F.2d 1552, 1556 (11th Cir. 1986) (finding that the FTCA did not apply); *Gregory v. Mitchell*, 634 F.2d 199, 203-04 (5th Cir. 1981) (dismissing claims against the United States and a federal agency for

---

[4] CMC and Harsco contend, briefly, that "any public funds paid by CMC and Harsco to the EPA from scrap materials located on the Site and used to offset the cost of the Superfund site certainly convey a benefit to the public by reducing the amount of government funds needed." (Doc. 26, p. 7 n. 2).  They then allege "[u]pon information and belief" that the amount paid to the EPA exceeds one millions dollars.  *Id*.  There are several problems with this argument; most notably, the defendants' information and belief is not considered on a motion to dismiss.  *See Grossman*, 225 F.3d at 1231.

failure to exhaust administrative remedies); *Mays v. U.S. Postal Serv.*, 928 F. Supp. 1552, 1562 (M.D. Ala. 1996) *aff'd,* 122 F.3d 43 (11th Cir. 1997) (dismissing claims against the United States Post Office); *Richland-Lexington*, 854 F. Supp. at 415 (analyzing the Contract Disputes Act). CMC and Harsco cannot rely on the FTCA to shield them from state tort liability.

*3. Stay*

Alternatively, CMC and Harsco ask this court to stay the litigation, pending resolution of GIP's claim against the United States in the CFC. They contend that this case "would have collateral estoppel and res judicata implications" and that a stay would "promote judicial economies." (Doc. 26, p. 14). GIP responds that "[r]es judicata does not apply" and that, although collateral estoppel may apply, "that is simply the outcome that Congress has ordained." (Doc. 31, p. 19). The court is not persuaded that this action should be stayed.

Significantly, GIP was required to bring the separate actions in different courts. The CFC "has *exclusive jurisdiction* to render judgment upon any claim against the United States for money damages exceeding $10,000 that is 'founded [] upon the Constitution ….'" *E. Enterprises v. Apfel*, 524 U.S. 498, 520 (1998) (emphasis added) (quoting 28 U.S.C. § 1491(a)(1)). Thus, "a claim for just compensation under the Takings Clause must be brought to the [CFC] in the first instance." *Id*. As to the state law claims, "the district courts … shall have *exclusive jurisdiction* of civil actions on claims against the United States, for money damages, … for injury or loss of property … caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346 (emphasis added). Furthermore, the CFC does not have jurisdiction over tort claims against private parties. *See generally* 28 U.S.C. § 1491. These actions could not be brought together in the CFC or the district court.

In their response, CMC and Harsco contend that despite the differing legal theories – requiring different jurisdictions – the court should preclude GIP from receiving a double recovery. (Doc. 34, pp. 7-8). CMC and Harsco are correct that GIP cannot recover twice for the same injury under different legal theories. *See Gen. Tel. Co. of the Nw., Inc. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 333 (1980) ("It also goes without saying that the courts can and should preclude double recovery by an individual."). However, the CFC "has no jurisdiction over a claim if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents." *United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1727 (2011) (interpreting 28 U.S.C. § 1500);[5] *UNR Indus., Inc. v. United States*, 962 F.2d 1013, 1021 (Fed. Cir. 1992) *aff'd sub nom. Keene Corp. v. United States*, 508 U.S. 200, 113 S. Ct. 2035, 124 L. Ed. 2d 118 (1993) ("[I]f the same claim is filed in another court after the complaint is filed in the Claims Court, the Claims Court is by that action divested of jurisdiction."). Therefore, the continuation of this suit does not risk a double recovery for GIP, and this court will not stay the proceeding in favor of the case before the CFC.

## Conclusion

For the foregoing reasons, the United States' Motion to Dismiss will be **GRANTED**, all claims against the United States will be dismissed **WITHOUT PREJUDICE,** and CMC and Harsco's Motion to Dismiss, or in the Alternative, to Stay will be **DENIED**. The court will enter a separate order to that effect contemporaneously.

This the 26th day of June 2014.

---

[5] "Two suits are for or in respect to the same claim … if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *Tohono O'Odham Nation*, 131 S. Ct. at 1731.

_/s/ Robert B. Propst_

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**