IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| **GADSDEN INDUSTRIAL PARK, LLC,** | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | **4:14-CV-39-KOB** |
| v. | ] | |
| | ] | |
| **CMC, INC. and HARSCO CORPORATION,** | ] | |
| | ] | |
| Defendants. | ] | |

## MEMORANDUM OPINION

Intent may be amorphous and subject to change. Yet intent plays a central role in many civil and criminal matters. Unless someone declares his intent, the finder of fact must infer intent from actions and circumstances.

When the court reviewed the Joint Motion for Summary Judgment (doc. 74) filed by the Defendants CMC, Inc. and Harsco Corporation, it had to view the evidence and all inferences drawn from the facts in the light most favorable to the Plaintiff, Gadsden Industrial Park LLC (GIP). In doing so, it set out the facts "for purposes of summary judgment" and noted that those facts "may not be the true facts proved at trial." (Doc. 87 at 5). Indeed, the facts actually presented at trial differed greatly from those found for summary judgment purposes. The court need not discuss all those differences. The different evidence regarding intent suffices

to support the granting of the Defendants' oral joint motion for judgment as a matter of law made at the close of Plaintiff's case. GIP's intent, as expressed by its owner Don Casey, upended the conversion case.[1]

Alabama law is clear: "An action for conversion will not lie for the taking of real property, nor will it lie for the taking of personal property that has been incorporated into real property." *Garrett v. Valley Sand & Gravel*. 800 So. 2d 600, 601-02 (Ala. Civ. App. 2000) (citations omitted) (quoting *Baxter v. South Trust Bank of Dothan*, 584 So. 2d 801, 805 (Ala. 1991)).

GIP argued at summary judgment and again in opposition to Defendants' motion that the 25 miles of railroad track was not a fixture because it had twice been sold separately from the land. As the court recognized at summary judgment,

> Under Alabama law, one criteria for whether personal property becomes affixed to real property is "[t]he intention of the party making the annexation of making permanent attachment to the freehold." *Milford v. Tennessee River Pulp & Paper Co.*, 355 So. 2d 687, 690 (Ala. 1978). Here, the sale of the spur lines *separate from* the eastern excluded property by the GSS bankruptcy trustee to WFLP and by WFLP to GIP indicate that the parties did not intend for the spur lines to permanently attach to the eastern excluded property.

(Doc. 87 at 24).

---

[1] The court notes that Plaintiff decided not to pursue its negligence claim at trial. (*See* Doc. 139) ("Plaintiff has indicated that it will not pursue its negligence claim and that only a conversion claim will proceed to trial.")

>The *Milford* case goes further to explain how to determine intent:
>
>This intention of the party making the annexation is inferred: (a) From the nature of the articles annexed; (b) The relation of the party making the annexation; (c) The structure and mode of annexation; (d) The purposes and uses for which the annexation has been made.

*Id.* (quoting *Langston v. State,* 11 So. 334, 335 (Ala. 1891)).

Intent can rarely be determined at summary judgment when it needs to be inferred and all reasonable inferences must be drawn in favor of the nonmoving party, here GIP. But the testimony at trial removed any question as to GIP's intent that the railroad track be a permanent attachment to the land.

The railroad track at issue began as part of the Gulf States Steel facility in Gadsden, Alabama. Gulf States used the railroad track to move its product around its 761 acre facility. After several decades of operation, Gulf States filed for bankruptcy in 1999.

The court finds the uncontradicted testimony of Daniel Maller particularly enlightening on the issue of intent. Mr. Maller has been the attorney for Frank Williams since 1988. When the Bankruptcy Trustee auctioned off many of Gulf States' assets in 2001, Frank Williams bought the tracks because he *intended* to acquire the plant site and restart the steel mill; he also bought many pieces of equipment to keep much of the plant together to preserve his options for

3

resurrecting the steel mill.  From 2002 to 2003, Williams partnered with a rail car switching company that ran a railroad car storage operation on the site with the permission of the Bankruptcy Trustee.  Mr. Williams' hope of restarting the steel mill was thwarted when Mr. Casey outbid him for the site at the auction in December of 2002.  Mr. Casey bought the entire 781 acres, but then carved out sections he did not want,  including approximately 200 acres in the Eastern Excluded Section where the track at issue here lay. Mr. Casey then created Gadsden Industrial Park LLC (GIP) to own and operate the site.

What happened next undermines GIP's assertion that it later had a right to use the track on the Eastern Exclude Section, property it did not own.  According to uncontradicted  testimony of Mr. Maller, shortly after GIP's purchase of the site was approved by the Bankruptcy Court, GIP sent a "demand letter" to Mr. Williams by certified mail; it stated that GIP, as owner, had the right to force Mr. Williams to abandon the property (the rail track and other equipment) or make arrangements acceptable to GIP as owner of the real property.  As a result of this letter, Mr. Williams agreed to divide "50/50" the storage revenue from cars on the tracks on GIP's property.[2]

---

[2] In ruling on Defendants' motion, the court did not reach the looming question of GIP's right to track on the Eastern Excluded Section where EPA was conducting its clean up operation that resulted in the removal and/or burial of some of GIP's track.  The court repeatedly warned

4

In December 2005, GIP purchased all the track owned by the Williams Family Partnership. After that purchase, the ownership of the tracks, and the ownership of the real property merged – with the exception of some track on the parcels of land Mr. Casey had carved out from his purchase of the site, including the spur lines at issue on the Eastern Excluded Section.

Mr. Casey testified at length about his intent upon purchase of the track to use the track to support GIP's railcar storage operation. In fact, he testified that GIP had bought locomotives and had been operating a railcar storage operation since 2007. He further testified on cross examination that he *never thought about taking up the track.*

Storing railcars on GIP's property of necessity required that the track be

---

the Plaintiff that without proof that GIP had a right to use the tracks on that property it did not own, the court had major questions about its case and would not allow the claim of damages for replacement costs to go to the jury. The position taken by GIP against the former owner of the track demonstrates that it knew – or at least took the stance – that permission to use the track on someone else's property must come from the owner of that property. Other testimony from Mr. Maller further reflects GIP's position that when Mr. Casey bought the track from Williams, it bought everything Williams owned including the right to use the track in the Eastern Excluded section. Mr. Maller testified that Mr. Williams was working closely with the Bankruptcy Trustee and had permission from the owner of the property, Gulf States as debtor in possession, and the Bankruptcy Trustee, and that the permission allowed the tracks to remain until the property was sold. As to the sale of tracks from Williams to GIP, Mr. Maller testified that Williams could only sell what it owned – the track – and that no representation was made about the right to use track anywhere.
    Although Mr. Casey had testified in his deposition, which was submitted in opposition to the motion for summary judgment, that the Bankruptcy Trustee told *him* that he could do whatever he wanted to do on the eastern property, notably GIP did not call the Trustee to reduce that hearsay statement to admissible evidence.

attached to the real property. Mr. Casey's testimony that he never considered pulling up the track, coupled with the use to which he put them, resolves the factual issue that existed at summary judgment and that precluded a finding at that time that the tracks were fixtures. The uncontradicted evidence at trial establishes that the railroad track was a fixture by meeting all of the criteria for such a determination: (1) the track was annexed to the property; (2) the use as a railcar storage facility required the track to be annexed to the realty with which it was connected; and (3) the owner of the track and the land intended that the attachment of the track to the real property be permanent. *See Milford,* 355 So. 2d at 690.

The determination of whether property is a chattel or a fixture is a mixed question of fact and law. *Milford*, 355 So. 2d at 690. Here, no question of fact remains. The railroad track is of such nature and use that permanent attachment generally would be intended. Mr. Casey resolved the question of intent that had been created by the separate sales of the track during and shortly after bankruptcy proceedings. The track has been in place at least fifty years, if not more. The only inference that can be properly drawn from the evidence demonstrates that the track, so attached to the real property, is a fixture. *See Milford*, 355 So. 2d at 690.

Having determined as a matter of law from the undisputed evidence that the track is a fixture, the next question becomes purely a question of law: Can GIP

pursue a conversion action for its fixture? Alabama law allows for one answer: No. *Garrett v. Valley Sand & Gravel*. 800 So. 2d 600, 601-02 (Ala. Civ. App. 2000) ("An action for conversion will not lie ... for the taking of personal property that has been incorporated into real property.") (quoting *Baxter v. SouthTrust Bank of Dothan*, 584 So. 2d 801, 804 (Ala. 1991)).

Because Alabama law precludes the only action GIP pursued,[3] the court GRANTS judgment as a matter of law at the close of the Plaintiff's case in favor of Defendants CMC Inc. and Harsco Corporation and against Plaintiff Gadsden Industrial Park LLC. Judgment will be entered separately.

---

[3] Defendants were prepared to move for judgment as a matter of law on their affirmative defenses of governmental contractor immunity, but the court precluded it by its finding that the track as a fixture could not support GIP's claim of conversion. Had the court allowed the Defendants to proceed with their alternative grounds, the court in all likelihood, would have granted it. Defendants proved through uncontradicted testimony that (1) EPA approved reasonably precise clean-up procedures – it determined that a recycling operation would be the best approach to reduce the two slag piles (really mountains of slag), approved the hiring of Harsco to do so, and directed CMC and, through it, Harsco to dig up anything in its way and recycle whatever it could; (2) CMC and Harsco followed these procedures; and (3) CMC and Harsco revealed to the EPA any dangers regarding the clean up procedures unknown to EPA. Specifically, the uncontradicted evidence showed that when Harsco uncovered the railroad "bumper car," it notified CMC who notified EPA; EPA instructed CMC who instructed Harsco to dig it up and recycle it. *See Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988).
   Further, the undisputed evidence showed that any questions of ownership of property were decided by EPA, who instructed CMC that it had resolved GIP's ownership claims and to proceed with the recycling project. *See* Defendants' Ex. 42. Thus, had the court allowed the Defendants to present its immunity motion, the court would have granted it as an alternative ground for judgment as a matter of law.

DONE and ORDERED this 5th day of August, 2016.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE